**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

MILLER INDSTRIES TOWING
EQUIPMENT INC.,                    Civ. No. 1:21-cv-08158-NLH-AMD

        Plaintiff,        **OPINION**

   v.

NRC INDUSTRIES,

        Defendant.

---

**APPEARANCES**:

KATELYN O'REILLY, ESQ.
LIZA M. WALSH, ESQ.
WILLIAM T. WALSH, JR., ESQ.
WALSH PIZZI O'REILLY FALANGA LLP
THREE GATEWAY CENTER
100 MULBERRY STREET
15TH FLOOR
NEWARK, NJ 07102

    *On behalf of Plaintiff.*

GREGORY D. MILLER, ESQ.
GENE Y. KANG, ESQ.
RIVKIN RADLER LLP
25 MAIN STREET, SUITE 501
COURT PLAZA NORTH
HACKENSACK, NJ 07601

    *On behalf of Defendant.*

**HILLMAN**, **District Judge**

    This matter comes before the Court pursuant to Plaintiff's

Motion to Dismiss Defendant's Third Counterclaim (ECF No. 50).

Plaintiff, Miller Industries Towing Equipment Inc., asserts that Defendant, NRC Industries, did not plead adequate facts in its third counterclaim alleging that the case at bar constitutes an antitrust violation.  (ECF No. 50 at 7).  Defendant has filed in opposition to Plaintiff's motion to dismiss, furthering its argument that Plaintiff is filing baseless lawsuits against Defendant in order to achieve an unfair advantage in the market for rotating wreckers by using the litigation process to gain access to nonpublic information, and asserting that Plaintiff's motion to dismiss inappropriately focuses on factual disputes in an attempt to dismiss Defendant's counterclaim.  (ECF No. 57).  Plaintiff has filed its reply brief.  (ECF No. 61).  For the reasons stated below, Plaintiff's Motion to Dismiss (ECF No. 50) will be denied in part and granted in part.

<u>**BACKGROUND**</u>

Plaintiff filed its Complaint on April 5, 2021 against Defendant, arguing that Defendant was infringing on its patent, U.S. Patent NO. 9,440,577 ("'577 Patent").  Plaintiff is a publicly traded, Tennessee based tow truck and towing equipment company founded in 1987, selling a variety of light to heavy-duty wreckers, car carriers, and rotating wreakers under several different brand names and is considered the largest manufacturer of towing and recovery equipment in the world.  (ECF No. 1 at 3).  The Patent at issue relates to "rotating wrecker" machines,

specifically inventing the extendable and retractable rotating wrecker controls.  (Id. at 4).

Plaintiff alleges that Defendant began to infringe on this patent in the fall of 2018, selling its own rotating wreckers with extendable and retractable controls.  (Id. at 4-5).  Defendant allegedly showed the infringing product at various trade shows, in industry publications, and ultimately sold two wreckers in New Jersey in 2020.  (Id. at 5).  Plaintiff alleges that Defendant has known of the '577 Patent since September of 2017 because NRC received its own patent after noting the '577 Patent was its "principal" reference.  (Id. at 9).  Plaintiff filed an infringement case against Defendant in 2019 in Tennessee, which was dismissed due to lack of personal jurisdiction over Defendant, who acknowledged that it would be subject to personal jurisdiction in New Jersey.  (Id. at 3).  Thereafter, on April 5, 2021, Plaintiff filed the instant case.  (Id.).

On June 9, 2021, Defendant filed a Motion to Dismiss the Complaint, arguing that Plaintiff failed to plausibly allege that Defendant's accused product practices the limitations as outlined in the '577 Patent.  (ECF No. 15).  After briefing opposition (ECF No. 16) and reply (ECF No. 23), the Court denied

Defendant's Motion to Dismiss on several grounds.  (ECF No. 39).[1]
The Court held that Plaintiff had adequately stated a claim for
patent infringement, meeting the three elements required to
state a claim that: 1) the Complaint clearly named the accused
product, 2) there was a sufficient description of the infringing
conduct, (where since 2018 Defendant had been selling rotating
wreckers that utilize extendable and retractable controls as
claimed by the '577 Patent), and 3) there were two instances
where these allegedly infringing products were sold in New
Jersey.  (ECF No. 39 at 8-9).

Additionally, the Court held that the Complaint
sufficiently outlined how the accused product infringed on every
element for eight different claims, whereas caselaw only
requires infringement on each element of at least one claim in
the patent at issue.  (Id. at 10-11).  The Court noted that
Defendant's arguments would have required the Court to engage in
claim construction, which is not appropriate at the motion to
dismiss stage.  (Id. at 12).

Defendant subsequently answered the complaint on February
4, 2022.  (ECF No. 42).[2]  In its Answer, Defendant raised several

---

[1] The Court originally filed its Opinion on January 20, 2022,
(ECF No. 36), and subsequently filed its Amended Opinion on
January 27, 2022.  (ECF No. 39).  For clarity, all references in
this Opinion refer back to the Amended Opinion.

[2] The Court notes that Defendant originally filed its Answer on

counterclaims.  Plaintiff is moving to dismiss the third counterclaim which alleges a violation of Section 2 of the Sherman Act regarding monopolization or attempted monopolization.  (Id. at 23).  Defendant describes Plaintiff as having about 75%-80% of the market for rotating wrecker products and utilizing the courts as a means to discourage competition. (Id.).  Defendants state that the cost of litigation exceeds any potential recovery, and the litigation process itself is being used to obtain sensitive commercial and financial information and coerce Defendant into paying a royalty that "dwarfs any reasonable value of the alleged invention."  (Id. at 18-19, 24).

Plaintiff's motion to dismiss notes that a claim that "a lawsuit is, by its very existence, anticompetitive and unlawful faces an uphill battle.  It is well-established that the First Amendment protects the right to petition the government and to have access to the courts."  (Id. at 6) (citing In re Wellbutrin XL Antitrust Litigation Indirect Purchaser Class, 868 F.3d 132, 147 (3d Cir. 2017)).  Plaintiff points to this Court's January 27, 2022 Opinion, which held that Plaintiff had sufficiently plead a patent infringement claim to survive a motion to dismiss, to demonstrate that this matter was brought on a good

February 3, 2022, (ECF No. 40), but resubmitted its Answer on February 4, 2022.  For clarity, all references in this Opinion refer to the resubmitted Answer. (ECF No. 42).

faith basis.  (Id. at 7).  Plaintiff also asserts that it has
taken the procedural processes necessary to protect its
invention by taking appropriate legal action[3] and to avoid any
anticompetitive behavior, such as proposing a two-tier
confidentiality order that requires attorneys'-eyes-only
designations to protect Defendant's confidential business
material.  (Id. at 9).  Further, Plaintiff argues that Defendant
has not alleged any antitrust injury.  (Id. at 10).

In its response Defendant argues that the '577 Patent
discloses only two types of control panel configurations and
that any other possible embodiments were disclaimed in the
prosecution of the patent and on that basis insists that the
filing of the second lawsuit in this Court qualifies this matter
as a "serial, objectively baseless" suit in accordance with the
elements required of a sham litigation.  (Id. at 1-3; 4-5; 11-
12).  Defendant notes that at this stage, it need only to
adequately suggest that the lawsuit is an attempt to interfere
directly with the business relationship of a competitor, and
that factual disputes cannot be resolved at a motion to dismiss
stage, rather such inferences should be in favor of the

---

[3] The Court notes that the "Tennessee Action" between Plaintiff
and Defendant was dismissed on jurisdictional grounds and that
no decision on the merits was entered.  Miller Industries Towing
Equipment, Inc. v. NRC Industries, No. 19-00095, 2020 WL 1897171
(E.D. Tenn. Apr. 16, 2020).

nonmovant.  (Id. at 8-9; 12-13).  Moreover, Defendant suggests that Plaintiff misunderstands the monopolization claim, arguing that a violation can occur when a party seeks to maintain monopoly power through anticompetitive practices, not just gain market share.  (Id. at 14) (citing Verizon Communs., Inc. v. Law Offices of Curtis V. Trinko, LLP, 540 U.S. 398, 407 (2004)).

Plaintiff's reply argues that, at bottom, if Plaintiff can show that its infringement position is "not so baseless that no reasonable litigant could realistically expect to secure favorable relief," then Defendant's sham litigation claim must fail as a matter of law.  (Id. at 1) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  Because much of Defendant's argument rests on claim construction, Plaintiff described in detail the claim construction positions between the two parties, arguing that Plaintiff's construction follows the doctrine of claim differentiation and that preferred embodiments are not limitations to claim interpretation, whereas Defendant's position is that the '577 Patent is limited by the figures in the patent where the "control panel" "closes off" the compartment.  (Id. at 4-5).

Plaintiff also argues that Defendant's monopolization claims are defective because they simply recite the elements required, rather than providing any factual basis.  For example, while Defendant has stated that Plaintiff has attempted to

unfairly gain access to Defendant's confidential business information, Plaintiff notes that Defendant has not articulated any specific incidents and that Plaintiff and Defendant have agreed to a thorough Discovery Confidentiality Order.  (Id. at 9); see also (ECF No. 60).

Defendant alleges that Plaintiff seeks to coerce Defendant into paying an unreasonably high royalty for the Patent's use, and Plaintiff counters that the royalty suggestion was part of a settlement negotiation that was "very reasonable per-unit" in relation to the "$1 million or more" that the rotating wreckers sell for.  (Id. at 9-10) (citing Ex. 2).

Following Plaintiff's reply brief the Parties submitted a Joint Motion to Seal Exhibit 2 of Plaintiff's reply brief.  (ECF No. 69).  The Motion to Seal will be addressed, as well as Plaintiff's Motion to Dismiss, below.

## DISCUSSION

### I.   Subject Matter Jurisdiction

Because this is a claim of patent infringement arising under the Acts of Congress relating to patents, 35 U.S.C. §§ 271, 281-285, this Court has subject matter jurisdiction over Plaintiffs' patent infringement claim pursuant to 28 U.S.C. §§ 1331 and 1338(a).  This Court may exercise subject matter jurisdiction over Defendants' counterclaims pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and 28

U.S.C. §§ 1331, 1337, 1338, and 1367.

## II.   Standard for Motion Pursuant to Rule 12(b)(6)

When deciding a motion to dismiss a crossclaim or counterclaim under Federal Rule of Civil Procedure 12(b)(6), the Court undertakes the same analysis as it would for claims in a complaint.  See Organon Inc. v. Mylan Pharms. Inc., 293 F.Supp.2d 453, 456-57 (D.N.J. 2003).  Thus, a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing Conley v. Gibson, 355 U.S. 41, 47 (1957); Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994); and then citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

To determine the sufficiency of a complaint, a court must take three steps: (1) the court must take note of the elements a plaintiff must plead to state a claim; (2) the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009) (alterations, quotations, and other citations omitted).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before Twombly."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its

face.'" Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at 570).

A court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999). A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56. Fed. R. Civ. P. 12(b).

### III. Sherman Act, 15 U.S.C. § 2

The Noerr—Pennington doctrine was developed from cases that placed a First Amendment limitation on the reach of the Sherman Act. Campbell v. Pennsylvania School Boards Association, 972 F. 3d 213, 218 (3d Cir. Aug. 27, 2020) (citing Hanover 3201 Realty, LLC v. Vill. Supermarkets, 806 F.3d 162, 178 (3d Cir. 2015)); E.R.R. Presidents Conf. v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961); United Mine Workers v. Pennington, 381 U.S. 657, 670 (1965)). Lawsuits are ordinarily protected activity under

Noerr-Pennington, but the Supreme Court has established a "sham exception."  See Professional Real Estate Investors, Inc. v. Columbia Pictures Industry, Inc., 508 U.S. 49, 51 (1993), ("PREI").  A lawsuit "does not qualify for . . . immunity if it 'is a mere sham to cover . . . an attempt to interfere directly with the business relationships of a competitor.'"  Id. (quoting Noerr, 365 U.S. at 144).

In order to determine whether a lawsuit is a "sham," the party invoking the sham exception must show that (1) the lawsuit is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits[;]" and (2) the lawsuit conceals "an attempt to interfere directly with the business relationships of a competitor, through the use of the governmental process - as opposed to the outcome of that process - as an anticompetitive weapon[.]"  Campbell, 972 F.3d at 218-19 (quoting PREI, 508 U.S. at 60-61) (emphasis in original) (other citations omitted).

Regarding the first prong of the "sham" analysis, the "objectively baseless" standard is analogized to the concept of "probable cause as understood and applied in the common law tort of wrongful civil proceedings."  PREI, 508 U.S. at 62.  "Probable cause to institute civil proceedings requires no more than a reasonable belief that there is a chance that a claim may be held valid upon adjudication."  Id. (internal citation

omitted).  The first prong of the test, with its emphasis on the reasonable litigant, is concerned with the objective merits of the lawsuit at issue.  Id.  "Thus, if probable cause exists, [a court's] inquiry is at an end."  Campbell, 972 F.3d at 219.

If the objective prong is met, "the fact that a suit may lack any objective merit is not itself determinative."  Id.  A court must then inquire into the plaintiff's subjective motivations for bringing suit.  Id. (citation omitted).  A court takes "this additional step to ascertain whether the actual motivation is to dragoon the 'governmental process' itself into use as a competitive tool," which "often means examining 'evidence of the suit's economic viability.'"  Id. (citation omitted).  "The difficulty of proving subjective motivation obviously 'places a heavy thumb on the scale' in favor of granting protection."  Id. (citation omitted).  "Only if these objective and subjective tests are satisfied is Noerr-Pennington protection lost and the suit permitted to proceed."  Id.

Even if, however, a party defeats the other party's Noerr-Pennington immunity by demonstrating both the objective and the subjective components of a sham litigation, that party must still prove a substantive antitrust violation.  PREI, 508 U.S. at 61.  "Proof of a sham merely deprives the defendant of immunity; it does not relieve the plaintiff of the obligation to establish all other elements of his claim."  Id.

13

To prevail on a monopolization claim under Section 2 of the Sherman Act a plaintiff must prove: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." McGary v. Williamsport Regional Medical Center, 775 F. App'x 723, 728-29 (3d Cir. 2019) (citing Broadcom Corp. v. Qualcomm Inc., 501 F.3d 297, 306-07 (3d Cir. 2007)).  An important element to a monopolization claim is evidence of an economic motive to prove the "willfulness" of a party's actions to maintain monopoly power.  Id. at 729.  A monopolization claim does not require proof of specific intent to monopolize, rather "a general intent to do the act, for no monopolist monopolizes unconscious of what he is doing.  In re Gabapentin Patent Litig. 649 F.Supp.2d 340, 351 (D.N.J. 2009) (quoting Times-Picayune Publ'g Co. v. United States, 345 U.S. 594, 626 (1953)).

To establish an attempted monopolization claim, a plaintiff must prove that the defendant engaged in predatory or anticompetitive conduct with a specific intent to monopolize and a dangerous probability of achieving monopoly power.  McGary, 775 F. App'x at 729-30.  "[I]n a traditional § 2 claim, a plaintiff would have to point to specific, egregious conduct that evinced a predatory motivation and a specific intent to

monopolize." Phila. Taxi Ass'n, Inc v. Uber Techs., Inc., 886 F.3d 332, 341 (3d Cir.), cert. denied, 139 S. Ct. 211, 202 (2018) (citations and quotations omitted).

To recover damages on a Section 2 claim, a plaintiff must also prove it suffered an "antitrust injury." Marjam Supply Co. v. Firestone Building Products Company, LLC, No. 11-cv-7119, 2019 WL 1451105 at *6 (D.N.J. 2019). Antitrust injuries have three elements: (1) an injury-in-fact; (2) that has been caused by the Act's violation; and (3) that is the type of injury contemplated by the Act. Id. (citing Brunswick Corp. v. Pueblo Bowl-O-Mat, 429 U.S. 477, 489 (1977)).

## IV.   **Analysis**

### a. **Sham Litigation**

In order for Defendant to successfully plead the "sham litigation" exception to the Noerr-Pennington doctrine, the lawsuit must be so objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits with all allegations in the Counterclaim at issue accepted as true, and with all inferences in favor of the movant pursuant to Fed. Rule of Civ. P. 12(b)(6). As discussed above, to refute the objectively baseless element requires no more than a reasonable belief that there is a chance that a claim may be held valid upon adjudication. PREI, 508 U.S. at 62.

In its counterclaim, Defendant asserts that Plaintiff's '577 Patent is limited to the embodiment of Figures 3 and 4 and specifically does not cover embodiment of Figure 3A, where the control panel is separate from, and moves independent of, the compartment door based on its own amendments attempting to overcome numerous rejections during the patent process. (ECF No. 42 at 9-15). Defendant argues that this prosecution history renders it "obvious" to Plaintiff that Defendant's products do not infringe on the '577 Patent. (Id. at 15). Moreover, Defendant asserts that they have "reached out to [Plaintiff] to explain why Plaintiff lacked any credible basis for alleging infringement" outside of its two motions to dismiss filings. (Id. at 16).

Presuming these facts as true, Defendant has alleged that the litigation at bar lacks an objectively reasonable basis both because no reasonable litigant could expect success on the merits in an infringement case on elements allegedly disclaimed in the Patent's prosecution, and because Plaintiff has initiated litigation twice asserting these allegedly disclaimed elements despite Defendant's asserted efforts to bring these deficiencies to Plaintiff's attention. (Id. at 16).

Defendant submits that Plaintiff has filed this action in an attempt to interfere directly with a competitor through the use of the governmental process - as opposed to the outcome of

that process - as an anticompetitive weapon – to suppress
Defendant's ability to compete in the rotating wrecker market.
(Id. at 18-19).  To that end, Defendant alleges that Plaintiff
is using the current litigation to impermissibly gain access to
Defendant's commercially sensitive documents, citing
"aggressive[] and urgent[]" discovery requests related to
sensitive commercial and financial information, as well as
utilizing the expense of the litigation to allegedly coerce
Defendant to pay an unreasonable royalty fee[4] and ultimately
stifle Defendant as competition in the market.  (Id. at 18-20).

Plaintiff argues that the basis of Defendant's argument
regarding the '577 Patent's prosecution engages in premature
claim construction.  (ECF No. 50 at 2).  However, Defendant is
entitled to present allegedly dispositive evidence of
noninfringement to overcome Noerr-Pennington immunity.  Otsuka
Pharmaceutical Co., Ltd., v. Torrent Pharmaceuticals Limited,
Inc., Torrent Pharma Inc., and Hetero Labs Limited, 118
F.Supp.3d 646, 657 (D.N.J. 2015).  Plaintiff also asserts that
the discovery requests made are reasonable and are being
protected by a confidentiality order.  See (ECF No. 50 at 9; No.
61 at 9).

---

[4] The Court acknowledges Plaintiff's Reply Brief at Ex. 2 (ECF
No. 61) asserts that the royalty fee is allegedly part of
settlement negotiations, however such facts are more readily
assessed at the summary judgment phase.

While Plaintiffs offer counterfactuals, for the Court to
engage in evaluating and weighing such facts is inappropriate at
the motion to dismiss phase because "[a]t this stage of the
litigation, the Court's probable cause analysis is based
exclusively on the allegations in" Defendant's Counterclaim and
as such, "the Court cannot make such factual determinations on a
factual controversy roiled by a motion to dismiss." In re
Gabapentin Patent Litig., 649 F.Supp.2d 340, 363-64 (D.N.J.
2009).

The Court recognizes that Defendant's counterclaim has
several factual and legal hurdles to overcome.  The Court also
recognizes that, taking a broad view, it might be reasonable to
conclude that the Court's denial of Defendant's initial motion
to dismiss Plaintiff's patent infringement claims bars
Defendant's motion *a fortiori*.  But that argument proves too
much.  In denying Defendant's motion to dismiss the patent
claims, the Court, as it was required to do, accepted
Plaintiff's allegations as true.  It did not find them as true.

The 12(b)(6) standard applies with equal force to
Defendant's antitrust counterclaim.  Here, Defendant has alleged
sufficient facts, at this stage of the litigation, if proven to
plausibly overcome Plaintiff's Noerr-Pennington immunity.  The
fact that such a claim would require Defendant to successfully

defeat Plaintiff's affirmative claims on the merits does not render its counterclaim defective at the pleading stage.

However, if Defendant fails to meet its burden of proof as to "sham litigation" upon litigation of the patent infringement claims and upon discovery as to Defendant's Counterclaims, Plaintiff may renew its claim of Noerr–Pennington immunity.  See Otsuka, 118 F.Supp.3d at 657.

### b. **Monopolization Claim**

To state a monopolization claim under Section 2 of the Sherman Act the moving party must prove the possession of monopoly power in the relevant market and the willful acquisition or maintenance of that power apart from appropriate means.  See McGary, 775 F. App'x at 728-29.

Monopoly power can be inferred from the structure and composition of the relevant market.  Broadcom Corp. v. Qualcomm Inc., 501 F.3d 297, 307 (3d Cir. 2007).  There are two aspects of market definition that are necessary to examine: the product market and geographic market.  Weiss v. York Hospital, 745 F.2d 786, 825 (3d. Cir. 1984).

The product market is comprised of competing products that are readily substitutable for one another, or by their cross-elasticity of demand.  Broadcom Corp., 501 F.3d at 308.  Neither party addresses the product market beyond defining the product as the "rotating wreckers."  (ECF No. 57 at 15) ("NRC has

19

identified the relevant economic substitutes (rotating wreckers) rather than the technological features those products possess (extendable wrecker controls)[.]"); (ECF No. 61 at 10 n.26) ("The '577 patent claims cover a rotating wrecker" via claim 1 which reads "A wrecker-type recovery vehicle . . . comprising: a vehicle frame . . . wrecker controls located on and supported by a control panel stored within an interior compartment of the wrecker supported by the vehicle body[.]").  This may be simply be because as the nature of this suit is alleged patent infringement, it necessarily implies that the products at issue are substitutable.

Plaintiff asserts that, by Defendant's definition of the product market as "rotating wreckers," that the market is impermissibly "coterminous" with the patent at issue.  (ECF No. 61 at 10).  However, whether or not the suit is coterminous with the '577 Patent may depend on claim interpretation.  If Defendant's interpretation - that Plaintiff disclaimed certain claims in an effort to overcome the Examiner's rejection during prosecution and thus the '577 is cabined to the specific designs embodied by specific figures - then the '577 Patent would not cover the entire wrecker as Plaintiff suggests, but just the technical features of the wrecker controls.  If this is true, which the Court assumes it to be so for the purposes of a motion to dismiss pursuant to Fed. Rule Civ. P. 12(b)(6), the suit is

not impermissibly coterminous with the '577 Patent.  However,
the Court need not settle the issue of Plaintiff's and
Defendant's dissimilar definitions of the relevant market
because Defendant alleges sufficient facts from which the Court
can make a plausible inference that Plaintiff possesses monopoly
power as discussed below.  See Radio Music License Committee,
Inc. v. SESAC, Inc., et al., 29 F.Supp.3d 487, 500 (E.D. Pa.
2014).

Next the Court must assess whether Plaintiff has monopoly
power.  Given that monopoly power is defined as the ability to
control price or to exclude or restrict competition from a
relevant geographic market, a primary criterion used to assess
the existence of such power is the party's market share.  Weiss,
745 F.2d at 827 (citing L. Sullivan, Handbook of the Law of
Antitrust § 22 (1977)).  Additionally, there must be significant
"entry barriers" that protect the market and allow for such
market share to give monopolistic power such as regulatory
requirements, high capital costs, or technological obstacles
that prevent new competition from entering the market.  Royal
Mile Co., Inc. v. UPMC, No. 10-1609, 2013 WL 5436925 at *29
(W.D. Pa. Sept. 27, 2013).

Here, the geographic market as alleged by Defendants is the
market for rotating wreckers sold in the United States.  (ECF
No. 42 at 20).  Defendant further asserts that Plaintiff has 75-

80% of the relevant market.  (ECF No. 42 at 20).  Plaintiff does
not explicitly contest the percentage of market share that is
asserted by Defendant.  Therefore, there are sufficient facts to
support an inference of monopoly power as related to market
share.  "Courts within the Third Circuit have held a defendant
has significant market share supporting an inference of monopoly
power if the defendant possesses sixty percent or more market
share in the relevant market."  Royal Mile Co., Inc., 2013 WL
5436925 at *30 (collecting cases).

Plaintiff states that because Defendant's allegations
"concede[] that [Plaintiff's] market share is entirely unrelated
to this lawsuit" because Plaintiff "already possesse[d]
approximately 75-80% of the market share" prior to this lawsuit,
(ECF No. 50 at 9-10).  This argument is unavailing because the
first prong to allege a monopolization claim does not preclude
market share acquired prior to an alleged anticompetitive act:
the "willful" maintenance of such market share power via
anticompetitive means is sufficient to state a monopolization
claim.  See McGary, 775 F. App'x at 728-29.

Defendants also allege facts to show that there are
barriers to entry in the market, such as high start-up costs and
the market's reliance on exclusive agreements with dealers for
product sales.  (ECF No. 42 at 20).  To illustrate this point,
Defendant cites to Plaintiff's Complaint which asserts that

Defendant and one other Maryland-based dealer are the two primary competitors in the United States.  (Id. at 19).

The next aspect to review in a monopolization claim is the willful acquisition or maintenance of monopoly power.  Broadcom Corp., 501 F.3d at 308.  "A monopolist willfully acquires or maintains monopoly power when it competes on some basis other than the merits."  Presque Isle Colon and Rectal Surgery, et al. v. Highmark Health, Highmark Inc. f/k/a Highmark Health Services, and Highmark Choice Company f/k/a Keystone Health Plan West, Inc., 391 F.Supp.3d 485, 502 (W.D. Pa. 2019) (internal citations omitted).  Conduct must do more than merely harm competitors, it must harm the competitive process itself.  Broadcom Corp., 501 F.3d at 308 (citations omitted).

Defendant asserts that Plaintiff's engagement in litigation over the '577 Patent is not on the merits but to exhaust Defendant's funds and therefore deter Defendant from competing in the niche "rotating wrecker" market.  (ECF No. 42 at 24).  This assertion alone is not enough to assert willful maintenance of monopoly power without more.  Defendant does not assert any facts sufficient to state a plausible claim that Plaintiff's pursuit of litigating the '577 Patent has impacted any other competitor, the market as a whole, or the competitive process to enter or exist in the market itself.  The Counterclaim only alleges facts that show the "sham litigation" is harming

23

Defendant.  _Broadcom Corp._, 501 F.3d at 308 (citing _Spectrum_
_Sports, Inc. v. McQuillan_, 506 U.S. 447, 458 (1993) ("The law
directs itself not against conduct which is competitive, even
severely so, but against conduct which unfairly tends to destroy
competition itself.")).

Even if facts related to competitors or the broader market
are difficult for Defendant to ascertain, there are other
indirect indications of harm to the process of competition.
"The hallmark of anticompetitive conduct is harm to competition,
but the danger of anticompetitive conduct is harm to the
consumer.  The most common characteristics of unlawful
monopolies are price increases, output decreases, and a
deterioration in quality and service, all of which the antitrust
laws seek to minimize."  _Radio Music License Committee, Inc._, 29
F.Supp.3d at 502 (citing _Babyage.com, Inc. v. Toys "R" Us, Inc._,
558 F.Supp.2d 575, 583 (E.D.Pa. 2008)).  Defendant does not
allege any facts relating to how Plaintiff's anticompetitive
conduct has affected the price of rotating wreckers, restricted
the output of the product, or impacted the quality of the
product or the servicing of consumer needs.  Thus, Defendant has
not sufficiently plead monopolization, and we will proceed to
consider whether Defendant has sufficiently plead attempted
monopolization.

     c. **Attempted Monopolization Claim**

Defendant's attempted monopolization argument requires separate analysis.  To state a claim for an attempted monopolization, a plaintiff must prove that the defendant engaged in predatory or anticompetitive conduct with a specific intent to monopolize and a dangerous probability of achieving monopoly power.  McGary, 775 F. App'x at 729-30.  "[I]n a traditional § 2 claim, a plaintiff would have to point to specific, egregious conduct that evinced a predatory motivation and a specific intent to monopolize."  Phila. Taxi Ass'n, Inc v. Uber Techs., Inc., 886 F.3d 332, 341 (3d Cir.), cert. denied, 139 S. Ct. 211, 202 (2018) (citations and quotations omitted).

An important element to a monopolization claim is evidence of an economic motive to prove the "willfulness" of a party's actions to maintain monopoly power.  Id. at 729.  A monopolization claim does not require proof of specific intent to monopolize, rather "a general intent to do the act, for no monopolist monopolizes unconscious of what he is doing.  Gabapentin, 649 F.Supp.2d at 351 (quoting Times-Picayune Publ'g Co. v. United States, 345 U.S. 594, 626 (1953)).

Defendant has sufficiently alleged, as described throughout this Opinion, that Plaintiff engaged in predatory conduct by utilizing a government process in a "sham litigation" involving the '577 Patent at two separate occasions for the impermissible purpose of deterring Defendant from operating in the same niche

market of rotating wreckers.  (ECF No. 42 at 16-19).  Defendant
has also alleged that Plaintiff has a significant economic
motive to prevent Defendant from directly competing in the
market given that the market itself is alleged to only have one
other competitor aside from Defendant, with Plaintiff already in
control of 75-80% of the market.  (ECF No. 42 at 19-20).  This
combination of facts also makes the assertion of Plaintiff
having a "dangerous likelihood of success" in monopolizing the
market plausible.  McGary, 775 F. App'x at 729-30.  Thus, the
Court finds that Defendant has provided sufficient facts at this
stage to state an attempted monopolization claim.

###    d. Antitrust Injury

Even without Noerr-Pennington immunity, Defendant must
still prove a substantive antitrust violation.  PREI, 508 U.S.
at 61.  As stated above, antitrust injuries have three elements:
(1) an injury-in-fact; (2) that has been caused by the Act's
violation; and (3) that is the type of injury contemplated by
the Act.  Marjam Supply Co., 2019 WL 1451105 at *6.  The Third
Circuit requires that an allegation of antitrust injury reflect
the challenged activity's anti-competitive effect on the
competitive market and that the allegedly anticompetitive
conduct harmed the competitive landscape and not just Defendant.
Brotech Corp. v. White Eagle Int'l Techs. Group, Inc., No. 03-

232, 2004 U.S. LEXIS 11552 at *23-24 (E.D. Pa. Jun. 21, 2004) (internal citations and quotations omitted).

Further, the Third Circuit has "consistently held an individual plaintiff personally aggrieved by an alleged anti-competitive agreement has not suffered injury unless the activity has a wider impact on the competitive market." Brotech Corp., 2004 U.S. LEXIS 11552 at *24 (citing Eichorn v. AT&T Corp., 248 F.3d 131, 140 (3d Cir. 2001)).  Thus, litigation costs alone do not qualify as antitrust injury without some allegation that said expenses incurred in defending "sham" litigation had any effect on competition, on the price, quantity or quality of Defendant's products, or prevented Defendant from pursuing its entry into the market.  (Id. at *23).

Here, Defendant argues that defending itself against Plaintiff's litigations have affected Defendant's efforts to compete in the market by "deterring or slowing" its efforts, to coerce Defendant into paying an unreasonable royalty payment, and resulting in "consumers in the United States [] being limited in their ability to choose" in the relevant market. (ECF No. 42 at 19-21, 24)

If these injuries are considered to be injuries-in-fact, it follows that such injuries have been caused by the Act's violation by Plaintiff; and that these injuries are the type of

injury contemplated by the Act, based on these allegations being accepted as true pursuant to Fed. Rule Civ. P. 12(b)(6).

As noted, litigation costs alone do not qualify as antitrust injury without some allegation that said expenses incurred in defending "sham" litigation influenced competition, on the price, quantity or quality of Defendant's products, or prevented Defendant from pursuing its entry into the market. While the facts alleged in the Counterclaim are thin on this point, the fact that Defendant is one of only two competitors to Plaintiff in this niche market of rotating wreckers sold in the United States, (ECF No. 42 at 19-20), coupled with the fact that Defendant has alleged (albeit opaquely) that its defense against Plaintiff has "deterred" its efforts in this market, the Court will not dismiss given a plausible inference of a negative impact on competition, and therefore consumers, in the relevant market.

Finally, the Court further recognizes that "district courts within this Circuit have routinely prohibited parties from invoking the protections of Noerr-Pennington at the dismissal stage of a case in the context of patent suits, [because] at which time the factual record remains undeveloped and insufficient for the purpose of determining whether a 'sham litigation' has been filed." Takeda Pharmaceutical Company Limited v. Zydus Pharmaceuticals (USA) Inc., 358 F. Supp. 3d

389, 394-95 (D.N.J. 2018) (citations omitted).  However, the
Court notes that parties to such suits are still required to
meet the minimum standards of pleading set by Twombly and Iqbal.
Here, the Court concludes that Defendant's claims as narrowed
above meet those pleading standards.  Thus, Plaintiff's Motion
to Dismiss Defendant's Third Counterclaim will be denied as to a
claim of attempted monopolization but granted as to a claim of
monopolization.

   **V.    Joint Motion to Seal; Local Civil Rule 5.3**

      Local Civil Rule 5.3 has several requirements that the
Parties must address for a court in this District to restrict
public access to court documents:

> (a) the nature of materials or the proceedings
> at issue;
>
> (b) the legitimate private or public interest
> which warrants the relief sought;
>
> (c) the clearly defined and serious injury that
> would result if the relief sought is not
> granted;
>
> (d) why a less restrictive alternative to the
> relief sought is not available;
>
> (e) any prior order sealing the same materials
> in the pending action; and
>
> (f) the identity of any party or nonparty known
> to be objecting to the sealing request.

L. Civ. R. 5.3(c)(2).  The party moving to seal must submit a
proposed order that contains proposed findings of fact and

conclusions of law.  Id.

The Court notes that while litigants have an interest in
privacy, the public also has a right to obtain information about
judicial proceedings.  In re Avandia Mktg., Sales Practices &
Prods. Liab. Litig., 924 F.3d 662, 670-74 (3d Cir. 2019).  When
discovery materials are filed as court documents, a more
rigorous common law right of access is applied.  Id. at 670.
"In addition to recognizing fewer reasons to justify the sealing
of court records, the public right of access — unlike a Rule 26
inquiry — begins with a presumption in favor of public access."
Id.

To rebut the presumption of public access, the party
seeking confidentiality must demonstrate "good cause" by
establishing that disclosure will cause a "'clearly defined and
serious injury to the party seeking closure.'"  Boehringer
Ingelheim Pharma GmbH & Co. v. Mylan Pharms., No. 14-4727, 2015
WL 4715307, at *2 (D.N.J. Aug. 7, 2015) (quoting Publicker
Indus., Inc. v. Cohen, 733 F.2d 1059, 1071 (3d Cir. 1984)).
"'Broad allegations of harm, unsubstantiated by specific
examples or articulated reasoning,' do not support a good cause
showing."  Id. (quoting Cipollone v. Liggett Group, Inc., 785
F.2d 1108, 1121 (3d Cir. 1986), cert. denied, 484 U.S.
976(1987)).

The Court acknowledges that this litigation is between

private parties and does not include a government agency or a matter of "public concern," where the threshold for sealing is elevated.  See Pansy v. Borough of Stroudsburg, 23 F.3d 772, 788 (3d Cir. 1995).

The nature of the material presented as Exhibit 2 to Plaintiff's reply brief, (ECF Nos. 61, 62), is the kind of material that is generally considered confidential by courts: confidential settlement information, including settlement communications and negotiations.  See Morgan v. Wal-Mart Stores, Inc., No. 14-4388, 2015 WL 3882748 at *2 (D.N.J. June 23, 2015) (granting motion to seal where "disclosure would result in the dissemination of confidential settlement negotiations and confidential settlement amounts" and where "the public has no legitimate interest" in gaining access to such confidential information in litigation between private parties).

The Parties articulate their legitimate private interest, in maintaining competitiveness in their market, by requesting the Court to keep this information under seal. (ECF No. 69 at 4).  The Parties assert that disclosure of this information poses a substantial risk of harm to legitimate proprietary interests and competitive positions, which is especially relevant in a patent infringement dispute.  (Id. at 5).

31

The Parties further specified their interest in sealing, and the harms that would result if the information was made public, in the Index submitted with the Motion to Seal. (Id. at Ex. 1). Such harms would include financial damage, damage to commercial standing, and damage to business relationships by competitors improperly and unfairly utilizing the non-public information to enhance their market position. See also (id. at 2-3).

The Parties assert that the requested action, to seal the document entirely, is the best method of protecting the confidential information and that there is no less restrictive alternative to protect their information because the document is entirely comprised of settlement discussion, and the Court agrees.

Additionally, the material at issue has been properly considered "confidential" pursuant to the Discovery Confidentiality Order, entered by this Court on March 28, 2022. (ECF No. 60). Finally, the request is made jointly by both Parties.

Thus, the Parties have complied with Local Civil Rule 5.3 and articulated specific allegations of harm to show good cause to justify sealing these materials. See Publicker, 733 F.2d at 1070-71 ("The party seeking . . . the sealing of a [document] bears the burden of showing

that the material is the kind of information that courts will protect and that there is good cause for the order to issue.  Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure.  The injury must be shown with specificity.  The exception that is closest to this case is the protection of a party's interest in confidential commercial information, such as a trade secret, where there is a sufficient threat of irreparable harm.") (internal citations omitted).

The Court notes that the litigants have a legitimate interest in privacy, but the public also has a right to obtain information about judicial proceedings, and the presumption of public access to court materials usually weighs in favor of openness.  Pansy, 23 F.3d at 786. However, in this matter, the sensitive, confidential business nature of the document at issue militates this Court to balance in favor of the Parties' joint sealing request at this time.

Although the Court now grants the Parties' requested relief, this relief may be temporary and not permanent. The Court reserves the authority to modify or vacate the Order entered on this issue if, at later stages of the proceedings, the public interest in access to the sealed

materials outweighs the interest in confidentiality when the disclosure of such facts are necessary for the Court to explain its future rulings.  This Court is funded by the public and does not sit, in general, to resolve private disputes in secret.  Moreover, the patent system itself is premised upon public disclosure in exchange for a government grant of a monopoly limited in time and antitrust claims by their nature are inherently a matter of consumer, and therefore public, concern.  Any modification or lifting of an Order to Seal will be done on notice and with an opportunity to be heard.

**CONCLUSION**

Accordingly, Plaintiff's Motion to Dismiss (ECF No. 50) will be denied in part and granted in part to the extent that the Third Counterclaim under the Sherman Act may proceed only as an attempted monopolization claim, not a monopolization claim. Parties' Joint Motion to Seal (ECF No. 69) will be granted.

An appropriate Order will be entered.


Date: March 2, 2023                 s/ Noel L. Hillman
At Camden, New Jersey               NOEL L. HILLMAN, U.S.D.J.