**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

MILLER INDUSTRIES TOWING
EQUIPMENT, INC.,                         Civ. No. 1:21-cv-08158-NLH-AMD

             Plaintiff,             **OPINION**

    v.

NRC INDUSTRIES,

             Defendant.

---

<u>**APPEARANCES**</u>:

KATELYN O'REILLY, ESQ.
LIZA M. WALSH, ESQ.
WILLIAM T. WALSH, JR., ESQ.
WALSH PIZZI O'REILLY FALANGA LLP
THREE GATEWAY CENTER
100 MULBERRY STREET
15TH FLOOR
NEWARK, NJ 07102

    *On behalf of Plaintiff.*

GREGORY D. MILLER, ESQ.
GENE Y. KANG, ESQ.
RIVKIN RADLER LLP
25 MAIN STREET, SUITE 501
COURT PLAZA NORTH
HACKENSACK, NJ 07601

    *On behalf of Defendant.*

<u>**HILLMAN**</u>, **District Judge**

Before the Court is a dispute over the construction of

claims relating to U.S. Patent No. 9,440,577 (the "'577

Patent"). This Opinion formally memorializes the Court's
findings as to its construction of the patent claims at issue
pursuant to <u>Markman v. Westview Instruments, Inc</u>., 517 U.S. 370
(1996).

I.    **BACKGROUND**

   **A. The '577 Patent**

Plaintiff, Miller Industries Towing Equipment, Inc.
("Miller") is the owner of the '577 Patent. (ECF 1-5 at 2).
The '577 Patent is entitled Vehicle Wrecker With Improved
Controls. (Id.) The '577 Patent relates to large tow trucks or
"wreckers." (ECF 80 at 1). The '577 Patent includes twenty-two
claims, comprising four independent and eighteen dependent
claims. (ECF 1-5 at 12–14).

The Patent includes six drawing sheets. (ECF 1-5 at 2–8).
Figure 1 depicts prior art. (Id. at 3). Figures 2, 3, and 4
all depict one embodiment. (Id. at 4–5, 7). More specifically,
Figure 3 "is an enlarged top and side perspective view of the
side tool box and wrecker controls." (Id. at 5, 10). Figure 3A
depicts a second embodiment, with a similar view as the Figure 3
drawing. (Id. at 6, 10). Finally, Figure 5 depicts "a top,
schematic view of a preferred embodiment." (Id. at 10). The
patent's description of the embodiments describes Figure 3 and
Figure 3A in relevant part as follows:

> Referring now to FIG. 3, outwardly-opening
> door 25 of wrecker side tool box 24 is
> shown. A console 30 such as a console made
> of a composite material, may be rigidly
> mounted (such as adhesively mounted, or
> attached using fasteners) on door 25, as
> shown. Console 30 may support wrecker
> controls generally designated as 31.
> . . .
>
> Referring to FIG. 3A, an alternative
> embodiment of side toolbox 24' is shown
> utilizing a shelf 25' supporting console 30
> which slides in and out of toolbox 24', and
> an upper door 27' which can close the
> toolbox from the top.

A key distinction between the two embodiments is that Figure 3 includes an "outwardly-opening door" with a mounted console and wrecker controls, whereas Figure 3A includes a shelf upon which the console is supported.

### B. Procedural History

On April 5, 2021, Plaintiff filed its Complaint against defendant, NRC Industries ("NRC" or "Defendant") for patent infringement. (ECF 1). Miller asserts that that certain of NRC's wrecker models infringe claims 1-3, 6, 11, 16, and 20-21 of the '577 Patent. (ECF 1 at ¶ 9). On February 4, 2022, NRC filed its Answer and Counterclaims. (ECF 42).

The Parties filed a Joint Claim Construction and Prehearing Statement on July 1, 2022, setting out the disputed terms as well as agreed upon terms. (ECF 80). On August 15, 2022, the Parties filed their respective Opening Briefs. (ECF 85, NRC

3

Opening Brief; ECF 86, Miller Opening Brief).  On September 16,
2022, the Parties filed their responses.  (ECF 89, NRC Response;
ECF 90, Miller Response).  Following briefing, this Court held a
claim construction hearing on March 8, 2023.  (ECF 97).

## II.  LEGAL STANDARD

Claim construction is "an issue for the judge, not the
jury."  Markman v. Westview Instruments, Inc., 517 U.S. 370, 391
(1996); see also Teva Pharms. USA, Inc. v. Sandoz, Inc., 574
U.S. 318, 332 (2015) ("This ultimate interpretation is a legal
conclusion.").  "[T]he words of a claim 'are generally given
their ordinary and customary meaning.'"  Phillips v. AWH Corp.,
415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting
Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed.
Cir. 1996)).  "[T]he ordinary and customary meaning of a claim
term is the meaning that the term would have to a person of
ordinary skill in the art [the "POSA"] in question at the time
of the invention."  Id. at 1313.  Claim construction begins with
the intrinsic evidence of the patent--the claims, the
specification, and the prosecution history--and may require
consultation of extrinsic evidence to understand the state of
the art during the relevant time period.  Teva Pharms. USA,
Inc., 574 U.S. at 331–32.

"Extrinsic evidence consists of all evidence external to
the patent and prosecution history, including expert and

inventor testimony, dictionaries, and learned treatises."
Markman, 52 F.3d at 980.  However, "[i]n those cases where the
public record unambiguously describes the scope of the patented
invention, reliance on any extrinsic evidence is improper."
Vitronics Corp., 90 F.3d at 1583.  "When an analysis of
*intrinsic* evidence resolves any ambiguity in a disputed claim
term, it is improper to rely on extrinsic evidence to contradict
the meaning so ascertained."  Intel Corp. v. VIA Techs., Inc.,
319 F.3d 1357, 1367 (Fed. Cir. 2003) (emphasis in original).
"Extrinsic evidence . . . cannot be used to alter a claim
construction dictated by a proper analysis of the intrinsic
evidence."  On-Line Tech. v. Bodenseewerk Perkin-Elmer, 386 F.3d
1133, 1139 (Fed. Cir. 2004) (citations omitted).

As part of construing claims, the Court can assess whether
a claim term is indefinite, and reach "'a legal conclusion that
is drawn from the court's performance of its duty as the
construer of patent claims.'"  In re Aoyama, 656 F.3d 1293, 1299
(Fed. Cir. 2011) (quoting Personalized Media Commc'ns, L.L.C. v.
Int'l Trade Comm'n, 161 F.3d 696, 705 (Fed. Cir. 1998)).  For a
claim term to be definite under 35 U.S.C. § 112 (2012), "a
patent's claims, viewed in the light of the specification and
prosecution history, [must] inform those skilled in the art
about the scope of the invention with reasonable certainty."
Nautilus, Inc. v. Biosig Instruments, Inc., 572 U.S. 898, 909

(2014).

It is permissible to "read in" testing conditions from the specification without violating the basic canon of construction not to import limitations from the specification into the claims, but only where this will "reconcile[ ] the ambiguous claim language with the inventor's disclosure." Chimie v. PPG Indus., Inc., 402 F.3d 1371, 1378–79 (Fed. Cir. 2005).  Where, however, the specification discloses multiple methods for evaluating a claim limitation without guidance to a person of ordinary skill in the art about which method to use, the claim limitation is indefinite.  Dow Chem. Co. v. Nova Chems. Corp. (Can.), 803 F.3d 620, 634–35 (Fed. Cir. 2015); Teva Pharms. USA, Inc. v. Sandoz, Inc., 789 F.3d 1335, 1344–45 (Fed. Cir. 2015), on remand from 574 U.S. 318 (2015).

### III. AGREED-UPON TERMS

The Parties initially agreed upon the construction of three terms, as set out in their Joint Claim Construction and Prehearing Statement.  (ECF 80 at 2).  The Parties later agreed upon what was previously Disputed Term 2.  (ECF 84 at 1).  The agreed upon terms have been construed by the Parties as follows.

| Term | Agreed-Upon Construction |
|---|---|
| "the wrecker controls comprise integrated electrical and hydraulic controls located on a single console"<br><br>(Claims 8, 14) | Plain and ordinary meaning in view of the claims, specification, and prosecution history. |

| | The plain and ordinary meaning means: The wrecker controls include both electrical and hydraulic controls located on the control panel. |
|---|---|
| "CAN bus"<br><br>(Claims 5 and 14) | A network of components that communicate using a vehicle bus standard application that allows microcontrollers and devices to communicate with each other within a vehicle. |
| "CAN controller"<br><br>(Claims 5 and 14) | A component associated with devices on the CAN bus (such as a sensor, actuator, or other control device) that controls the sending and receiving of messages on the CAN bus. |
| "supported by"<br><br>(Claims 1, 14, and 16) | "directly or indirectly having its weight borne by" |

## IV.  DISPUTED TERMS[1]

The Court has considered the Parties' positions on their proposed construction of the disputed terms as presented in their comprehensive briefs and at oral argument at the Markman hearing.  Accordingly, the Court construes the claim-terms as follows.

### A. Disputed Term 1: "control panel"

| Claim Term | Miller's Proposed Construction | NRC's Proposed Construction |
|---|---|---|
| "control panel"<br><br>(Claims 1-3, 14, 16, 21) | "A platform on which wrecker controls are located and supported, and may also include a separate closing | "A unit on which controls for the wrecker are attached or integrated." |

---

[1] The Parties' respective proposed constructions are set out in their Joint Claim Construction and Prehearing Statement (ECF 80 at 3-6), with revisions in a letter to the Court (ECF at 84).

| | portion for closing off an interior compartment of the vehicle." | |
|---|---|---|

In support of its construction, Miller asserts that the claim term "control panel," as used in asserted claims 1–3, 14, 16, and 21, is broad enough to include both the embodiment in Figure 3 and in Figure 3A of the patent.  (ECF 86 at 16).  It explains that only Miller's proposed construction covers both embodiments.  (Id.).

In the Figure 3 "a side compartment 24 has an outwardly opening door 25 that *both* closes off the compartment and carries the wrecker controls 30."  (ECF 86 at 16–17 (emphasis in original)).  On the other hand, in Figure 3A "an upper door 27' is used to close off the compartment, while a *separate* sliding shelf 25' – unattached to the door – carries the wrecker controls 30."  (Id. at 17 (emphasis in original)).  This "upper door" comes down like a garage door, to fully close off access to the wrecker controls and the compartment they are stored in.  (ECF 99 at 31:17–19).  The crux of Miller's argument is that this separate door in Figure 3A must be part of the "control panel" in this embodiment.  (ECF 86 at 18).  Otherwise, the Figure 3A embodiment could not meet the description in the asserted independent claims, specifically citing independent Claim 1 for example.  (Id. at 16).  Claim 1 claims:

1.   A wrecker-type recovery vehicle for recovering other disabled vehicles, comprising:

a vehicle frame extending along a longitudinal axis, the vehicle frame supporting a vehicle body and carrying an extendable and retractable boom; and

manually-manipulable wrecker controls located on and supported by a control panel stored within an interior compartment of the wrecker supported by the vehicle body, the wrecker controls configured to control movement of one or more wrecker components useful in vehicle recovery, wherein the control panel has a base end and a distal end opposite the base end; and

the control panel moveable from a first, storage position within the interior compartment of the vehicle body, wherein the control panel in the first position ***is operable to close off the interior compartment*** from an operator of the wrecker controls, to a second, operable position displaced from and outside the compartment and remote form the vehicle exterior, in a direction perpendicular to the longitudinal axis, wherein the control panel in the second position provides an open interior compartment in which the wrecker controls are located in a position where they may be manipulated by the operator, and wherein in the second position the control panel is downwardly-angled relative to ground such that the distal end is located remote from the vehicle body and below a horizontal axis parallel to ground and intersecting the base end, and wherein the control panel remains supported by the vehicle body while in the second position, whereby the displacement of the control panel to

> the second position comprises a
> strategic location of the wrecker
> controls, providing an operator with an
> ergonomically-enhanced work surface.

(ECF 1-5 at 12 (emphasis added)).  Miller explains that this

claim requires the control panel to be "operable to close off

the interior compartment."  (ECF 86 at 16 (quoting the '577

Patent)).  Thus, looking to Figure 3A, Miller concludes that the

separate door must be part of the "control panel," as it is the

mechanism that closes off the interior compartment.  (Id. at

18).  Specifically, Miller states that ""control panel" must be

broad enough to include both the supportive console the wrecker

controls rest on (such as the shelf of FIGURE 3A (see Ex. A)),

as well as a closing element."  (Id. at 20).  Miller asserts

that "NRC's proposed construction includes limitations" and

"would exclude the FIGURE 3A example from claim coverage."  (Id.

at 17, 20).  It contends that "[r]arely, if ever" will a

construction that excludes the disclosed embodiments be correct.

(Id. at 17 (citing Vitronics Corp., 90 F.3d at 1583)).

Moreover, Miller asserts that review of dependent claims

instructs that control panel as used in claim 1 must be broad

enough to cover both controls on a door as well as controls on a

shelf.  (Id. at 18).  It explains that "[i]f dependent claims

are directed to specific features, their independent claim

should not be limited to those features; otherwise, the

dependent claims would be rendered superfluous and unnecessary."
(Id.).  Miller points out that claim 1 does not require the
control panels to be on a door.  (See Id.).  Further, dependent
claim 3 "recites that the control panel includes an outwardly-
opening door" whereas dependent claim 4 "recites that the
control panel includes a sliding shelf."  (Id. at 18).  Miller
argues that NRC's construction limits claim 1 to wrecker
controls on a door, which it asserts is undermined by the
distinction between claims 1, 3, and 4.  It argues that NRC's
construction "would render Claim 3 superfluous, while nullifying
Claim 4."  (Id. at 19).

Finally, Miller claims that the prosecution history
supports its construction because there is nothing in the
prosecution history that limits the claims, while NRC's
construction would.  (Id. at 18).

NRC argues that control panel should be construed
"[c]onsistent with the plain and ordinary meaning."  (ECF 85 at
12).  NRC explains that defining the control panel based on
"attachment or integration with the wrecker controls" is
supported by the claim language.  (Id. at 13).  Specifically, it
is "consistent with the claim requirement that the control panel
is 'stored within an interior compartment of the wrecker'" and
that the "control panel is moveable 'to a second, operable
position displaced from and outside the compartment.'"  (Id.).

11

NRC avers that its proposed construction is supported by the canon of claim differentiation.  (Id. at 15).  NRC explains that the distinction between claim 1 and claim 22 undermines Miller's proposed construction, stating that "Claim 22 requires 'a control panel' and 'a door separate from the control panel.' If, as Miller asserts, 'control panel' can include a door that is separate from and moves independently of the structure on which the controls are mounted, it is unclear what claim 22's 'door separate from the control panel' would cover."  (Id.).  Accordingly, NRC argues that the embodiment in Figure 3A is not covered by asserted independent claims 1, 14, and 16, but instead is covered by non-asserted independent claim 22, which requires "a control panel" and "a door separate from the control panel."  (Id.).  NRC's position is that "if the structure for closing the compartment is 'attached to' the wrecker controls then it forms part of the control panel (as required by independent claims 1, 14, and 16).  If the door is separate from the wrecker controls (as in claim 22), it is not part of the control panel."  (Id.).

NRC disputes Miller's argument that the asserted independent claims cover the Figure 3A embodiment.  NRC argues that Miller is incorrect in arguing that "the law prohibits the Court from construing independent claims 1, 14, and 16 in a manner that would exclude one of the disclosed embodiments from

12

the scope of those claims." (ECF 89 at 6). Rather, NRC explains that "[t]he law is clear that all claims do not need to cover all examples or embodiments described in the specification." (Id. (citing Baran v. Med. Device Techs., Inc., 616 F.3d 1309, 1316 (Fed. Cir. 2010) ("It is not necessary that each claim read on every embodiment"); PPC Broadband, Inc. v. Corning Optical Communs. RF, LLC, 815 F.3d 747, 755 (Fed. Cir. 2016) ("This does not mean, however, that each and every claim ought to be interpreted to cover each and every embodiment"); Intamin, Ltd. v. Magnetar Techs., Corp., 483 F.3d 1328, 1337 (Fed. Cir. 2007) ("[T]his court has acknowledged that a claim need not cover all embodiments.")).

NRC disputes Miller's claim differentiation argument. Contrary to Miller's characterization, NRC explains that its proposed construction does not limit claim 1 to wrecker controls on a door. (ECF 89 at 11). NRC explains that "claims can be broader than the preferred embodiments." (ECF 85 at 20-21 (citing Phillips, 415 F.3d at 1323.). Thus, NRC explains that claim 1 can include a design with the control panel consisting of wrecker controls on a shelf, but maintains that Figure 3A does not show this design. (ECF 89 at 11). Instead, NRC explains that in addition to a door as shown in Figure 3, a design under claim 1 "could also be an attached drawer 'front' that closes off the compartment in the retracted position

13

(similar to a common filing cabinet drawer)."  (Id.).  Thus, NRC explains that dependent claim 4 may refer to a design that is not covered by any of the embodiments.

In addition to the claim language, NRC points to the specification in support of its construction.  (ECF 85 at 15-16).  NRC explains that "[t]here is not a single instance in the specification of the '577 patent where a separately operable structure (such as an independent compartment door) is referred to as part of the 'control panel.'"  (Id. at 16).  NRC points out that while the door in Figure 3 is labeled as 25 and the shelf in Figure 3A is labeled 25', the door in Figure 3A is labeled 27'.  (Id.).  Thus, NRC concludes "the patentee viewed physical attachment as the feature that makes a structure part of the control panel—not 'support,' 'location,' or ability to close the compartment."  (Id.).

NRC also refers to the prosecution history, and explains that throughout the prosecution history, Miller was required to narrow independent claims 1, 14, and 16 to "overcome the cited prior art by adding language to the first three independent claims requiring that the ***control panel*** (as opposed to some other structure) be operable to close off the interior compartment."  (Id.).

We do not reach that parties' arguments as to extrinsic evidence, as the intrinsic evidence is sufficient to support construction.  See Vitronics Corp., 90 F.3d at 1583.

Based on the language of the claims, this Court adopts NRC's proposed construction.  This Court finds that defining control panel to include an entirely separate door is inconsistent with the plain meaning of the term.  While Miller is correct that a construction that excludes an embodiment is rarely correct, an embodiment need not be covered by each independent claim.  Baran v. Med. Device Techs., Inc., 616 F.3d 1309, 1316 (Fed. Cir. 2010) ("It is not necessary that each claim read on every embodiment.").  Moreover, "[i]t is often the case that different claims are directed to and cover different disclosed embodiments."  Helmsderfer v. Bobrick Washroom Equip., Inc., 527 F.3d 1379, 1383 (Fed. Cir. 2008).  Therefore, it is sufficient that one independent claim reads on the Figure 3A embodiment.  Unasserted, independent claim 22 clearly covers the Figure 3A embodiment, describing a "control panel comprising an outwardly sliding shelf" and "a door separate from the control panel."  (ECF 1-5 at 14).  Claim 22 specifically describes a design like that in Figure 3A where the control panel and the unit used for "closing and opening the interior compartment" are separate.  (Id.).  Thus, construing "control panel" to not include the closing structure in all embodiments and designs is

15

consistent with the canon of claim differentiation--claim 1 includes a control panel that closes off the control storage compartment, whereas claim 22 includes a control panel and separate closing structure.  See Comark Commc'ns, Inc. v. Harris Corp., 156 F.3d 1182, 1187 (Fed. Cir. 1998) ("While we recognize that the doctrine of claim differentiation is not a hard and fast rule of construction, it does create a presumption that each claim in a patent has a different scope.").

Further, this Court is unpersuaded by Miller's stated concerns that this construction limits claim 1 to include a door.  While claim 1 only reads on the Figure 3 embodiment, not the Figure 3A embodiment, a claim may be broader than any of the embodiments.  See Metrologic Instruments, Inc. v. Symbol Techs., Inc., 460 F. Supp. 2d 571, 608 (D.N.J. 2006) ("a preferred embodiment may be narrower than the claim or claims to which it corresponds").  As such, the fact that claim 1 is not limited to a control panel consisting of a door does not require an interpretation that fits the Figure 3A embodiment into the claim 1 language.

Based on the claim language and intrinsic evidence, "control panel" will be defined as "a unit on which controls for the wrecker are attached or integrated."

     **B. Disputed Term 3: "wherein the control panel in the first position is operable to close off the interior compartment from an operator of the wrecker controls"**

| Claim Term | Miller's Proposed Construction | NRC's Proposed Construction |
|---|---|---|
| "wherein the control panel in the first position is operable to close off the interior compartment from an operator of the wrecker controls"<br><br>(Claim 1) | Plain and ordinary meaning in view of the claims, specification, and prosecution history.<br><br>The plain and ordinary meaning means: "at least a portion of the control panel in the first position blocks the operator from accessing the interior of the compartment." | See construction of "control panel."<br><br>"Movement of the control panel to the first position (as opposed to movement of some other component not attached to or integral with the control panel) blocks the operator from accessing the inside of the interior compartment." |

Miller explains that consistent with its proposed construction of "control panel," its proposed construction of Disputed Term 3 includes both the Figure 3 embodiment "where the control panel is the door" as well as the Figure 3A embodiment "in which a portion of the control panel is the door, while a remaining portion of the control panel – a shelf – carries the wrecker controls." (ECF 86 at 22).

NRC counters that "[b]ecause the control panel is *a singular unit* on which the wrecker controls are mounted or integrated, it is movement of the control panel to the first position that 'closes off the compartment,' not movement of some other component that is neither attached to or integral with control panel." (ECF 85 at 25 (emphasis in original)). NRC claims that Miller does not point to any evidence in support of

its construction of this claim, and fails to identify any support for its position that it is sufficient for "at least a portion" of the control panel to satisfy the requirements of the claim."  (ECF 89 at 15–16).

Construction of the "control panel" claim informs construction of this claim.  It is fundamental that while engaging in claim construction, "courts may not redraft claims."  United Therapeutics Corp. v. Sandoz, Inc., No. 3:12-CV-01617, 2013 WL 3223384, at *9 (D.N.J. June 25, 2013) (finding that a proposed construction that "essentially adds limitations to the claim . . . "violates the fundamental claim construction rule that 'courts may not redraft claims'")).  Miller's proposed construction adds language that does not exist in the claim.  Its proposed construction thus asks this Court to redraft to claim to expand its meaning.  Such a construction is improper.  See Beacon Adhesives, Inc. v. United States, 134 Fed. Cl. 26, 39 (2017) (rejecting a proposed construction that "erroneously expands the scope of the term beyond the clear meaning in the specification"); Sepracor Inc. v. Dey, L.P., 590 F. Supp. 2d 649, 654 (D. Del. 2008) (rejecting a proposed construction as "attempting to improperly expand the scope of its claims").

Consistent with this Court's construction of "control panel," this Court adopts NRC's proposed construction of Disputed Term 3.  As such, "wherein the control panel in the

18

first position is operable to close of the interior compartment from an operator of the wrecker controls" will be defined as "movement of the control panel to the first position (as opposed to movement of some other component not attached to or integral with the control panel) blocks the operator from accessing the inside of the interior compartment."

### C. Disputed Term 4: "wherein the control panel in the second position provides an open interior compartment in which the wrecker controls are located in a position where they may be manipulated by the operator"

| Claim Term | Miller's Proposed Construction | NRC's Proposed Construction |
|---|---|---|
| "wherein the control panel in the second position provides an open interior compartment in which the wrecker controls are located in a position where they may be manipulated by the operator"<br><br>(Claim 1) | Plain and ordinary meaning in view of the claims, specification, and prosecution history.<br><br>The plain and ordinary meaning means: "The control panel in the second position provides an open interior compartment granting the operator access to the wrecker controls located on the control panel." | See construction of "control panel."<br><br>"Movement of the control panel to the second position (as opposed to movement of some other component not attached to or integral with the control panel) opens the interior compartment and provides operator access to the wrecker controls located on the control panel." |

In discussing both Disputed Terms 4 and 7, Miller argues that "given that the 'control panel' can include both the door and the platform for [Miller's] construction, when the 'control panel' is in the 'second' (outside the compartment) position, only [Miller's] construction allows the 'control panel' to

provide an open compartment, providing the operator with access to its interior." (ECF 86 at 23).

NRC urges that "it is movement of the control panel to the second position that provides the operator access to 'manipulate the controls,' not movement of some other component that is neither attached to or integral with control panel." (ECF 85 at 25).

Again, consistent with the above construction of control panel and the conclusion that claim 1 does not read on the Figure 3A embodiment, this Court adopts NRC's construction here. Therefore, "wherein the control panel in the second position provides an open interior compartment in which the wrecker controls are located in a position where they may be manipulated by the operator" will be construed as "movement of the control panel to the second position (as opposed to movement of some other component not attached to or integral with the control panel) opens the interior compartment and provides operator access to the wrecker controls located on the control panel."

### D. Disputed Term 5: "wherein control panel comprises an outwardly-opening door associated with a compartment accessible from an exterior of the vehicle"

| Claim Term | Miller's Proposed Construction | NRC's Proposed Construction |
|---|---|---|
| "wherein control panel comprises an outwardly-opening door | Plain and ordinary meaning in view of the claims, specification, | "The control panel has a door attached to or integral with it that is accessible from outside the vehicle |

| associated with a compartment accessible from an exterior of the vehicle" (Claim 3) | and prosecution history. The plain and ordinary meaning means: "The control panel includes an outwardly-opening door that provides access to the operator from the outside of the vehicle." | and that opens outwardly to provide access to the compartment in which the control panel is located." |
|---|---|---|

In support of its construction of Disputed Term 5, Miller points to its proposed construction of "control panel" and explains that only Miller's construction includes "a version of the invention in which a door does not carry the wrecker controls" as demonstrated in the Figure 3A embodiment.  (ECF 86 at 24).  Thus, although dependent claim 3 expressly recites a door, Miller takes issue with the "attachment" language.  (Id.; ECF 90 at 17).  It alleges that where the specification "states that 'console 30' is 'mounted' on the door," console 30 is not synonymous with "control panel."  (ECF 90 at 17).  Moreover, it states that this specification language only focuses on the Figure 3 embodiment, and as such does not provide support for NRC's argument that where a door is part of a control panel it must be attached.  (Id.).

NRC's position is that "[f]or the same reasons set forth above with respect to NRC's construction of the term 'control panel,' . . . the 'control panel' is a unit on which controls for the wrecker are attached or integrated."  (ECF 85 at 23).

21

NRC explains that describing the door as attached to or integrated with the control panel "is consistent with the specification, which describes a control panel that is 'mounted' on the compartment door."  (Id.).

Again, for the reasons expressed above, this Court adopts NRC's proposed construction.  Contrary to Miller's urging, dependent claim 3 does not read on the Figure 3A embodiment.  Thus, Miller's distinction that the specification is referring to the embodiment in Figure 3 when it describes console 30 as "mounted" on the door supports, rather than undermines, NRC's proposed construction.  Accordingly, "wherein control panel comprises an outwardly-opening door associated with a compartment accessible from an exterior of the vehicle" will be defined as "the control panel has a door attached to or integral with it that is accessible from outside the vehicle and that opens outwardly to provide access to the compartment in which the control panel is located."

### E. Disputed Term 6: "wherein the control panel is moveable from a first, storage position, thereby closing the interior compartment"

| Claim Term | Miller's Proposed Construction | NRC's Proposed Construction |
|---|---|---|
| "wherein the control panel is moveable from a first, storage position, thereby | Plain and ordinary meaning in view of the claims, specification, and prosecution history. | "Movement of the control panel to the first position inside the compartment (as opposed to movement of some other component not attached to or |

| closing the interior compartment" (Claim 14) | The plain and ordinary meaning means: "Movement of at least a portion of the control panel blocks access to the inside of the compartment." | integral with the control panel) blocks access to the inside of the compartment." |
|---|---|---|

In support of its construction, Miller explains that "Term No. 6 recites that the 'control panel' closes the compartment, and Miller's Patent discloses a door to accomplish this." (ECF 86 at 24). In addition, Miller admits that "[t]he term 'thereby' in Term No. 6 might suggest that movement from the storage to the extended position 'automatically' results in door closure" but instead "proposes that 'thereby' be construed as permitting closure to occur." (Id.). To this end, Miller edited its proposed construction in its Miller's Opening Brief, as follows: "movement of at least a portion of the control panel [permits] block[ed]s access to the inside of the compartment." (Id. at 24).

NRC claims that the language in Disputed Term 6 describes a "unitary movement" where movement from the extended position to the storage position automatically closes the door. (ECF 89 at 16). NRC asserts that in asking this court to construe Disputed Term 6 as "permitting" rather than "requiring" closure, "Miller asks the Court to rewrite the claim language." (Id.). NRC also points out that Miller did not actually include this "permitting" language in its proposed construction, but is

asking the Court now in its briefing to add this language in. (Id.).

This Court finds that Miller's proposed construction expands the claim language and as such is inconsistent with the plain meaning.  See Beacon Adhesives, Inc., 134 Fed. Cl. at 39; Sepracor Inc., 590 F. Supp. 2d at 654.  NRC's proposed construction is consistent with the above adopted construction of control panel, and this Court therefore adopts NRC's proposed construction.  "Wherein the control panel is moveable from a first, storage position, thereby closing the interior compartment" will be construed as "movement of the control panel to the first position inside the compartment (as opposed to movement of some other component not attached to or integral with the control panel) blocks access to the inside of the compartment."

**F. Disputed Term 7: "to a second, operable position displaced from and outside the compartment, thereby opening the interior compartment so that the operator can manipulate the wrecker controls"**

| Claim Term | Miller's Proposed Construction | NRC's Proposed Construction |
|---|---|---|
| "to a second, operable position displaced from and outside the compartment, thereby opening the interior | Plain and ordinary meaning in view of the claims, specification, and prosecution history.<br><br>The plain and ordinary meaning means: "When the control panel is in the second operable | "Movement of the control panel to the second position outside the compartment (as opposed to movement of some other component not attached to or integral with the control panel) opens |

| | | |
|---|---|---|
| compartment so that the operator can manipulate the wrecker controls" (Claim 14) | position, at least a portion of the control panel resides outside the compartment and provides the operator with access to the wrecker controls." | the compartment and provides operator access to the wrecker controls on the control panel." |

Both Parties present the same arguments for Disputed Claim 7 as set out in Disputed Claim 4.  Thus, for the same reasons discussed related to Disputed Claim 4 above, this Court adopts NRC's proposed construction.  Therefore, "to a second, operable position displaced from and outside the compartment, thereby opening the interior compartment so that the operator can manipulate the wrecker controls" will be defined as "Movement of the control panel to the second position outside the compartment (as opposed to movement of some other component not attached to or integral with the control panel) opens the compartment and provides operator access to the wrecker controls on the control panel."

### G. Disputed Term 8: "the control panel comprising an outwardly-opening door associated with the interior compartment accessible from an exterior of the vehicle"

| Claim Term | Miller's Proposed Construction | NRC's Proposed Construction |
|---|---|---|
| "the control panel comprising an outwardly-opening door associated with the | Plain and ordinary meaning in view of the claims, specification, and prosecution history. | "The control panel has a door attached to or integral with it that is accessible from outside the vehicle and that opens outwardly to provide |

| | | |
|---|---|---|
| interior compartment accessible from an exterior of the vehicle" <br><br> (Claim 16) | The plain and ordinary meaning means: "The control panel includes an outwardly-opening door that is accessible from outside the vehicle to provide access to the operator." | access to the compartment in which the control panel is located." |

Both parties set out the same arguments with respect to Disputed Term 8 as they do for Disputed Term 5 discussed above. However, upon reviewing the proposed constructions for Disputed Term 8, Miller's proposed construction more closely aligns with the constructions we have adopted throughout this analysis, specifically the definition of control panel as "[a] unit on which controls for the wrecker are attached or integrated." NRC's construction here seems to define the control panel as a unit that is attached to a door, whereas this Court's constructions throughout have defined the control panel to include the attached supporting structure that holds and supports the wrecker controls.  Thus, this Court adopts Miller's proposed construction.  Therefore, "the control panel comprising an outwardly-opening door associated with the interior compartment accessible from an exterior of the vehicle" will be defined as "the control panel includes an outwardly-opening door that is accessible from outside the vehicle to provide access to the operator."

**H. Disputed Terms 9 through 13**

| Claim Term | Miller's Proposed Construction | NRC's Proposed Construction |
|---|---|---|
| "strategic location"<br><br>(Claims 1, 14, 16) | Plain and ordinary meaning in view of the claims, specification, and prosecution history.<br><br>The plain and ordinary meaning means: "A location that provides a particular purpose or advantage." | Indefinite |
| "ergonomically-enhanced work surface"<br><br>(Claims 1, 14, 16) | Plain and ordinary meaning in view of the claims, specification, and prosecution history.<br><br>The plain and ordinary meaning means: "A work surface that relates to or is designed for efficiency and comfort in the working environment." | Indefinite |
| "substantially expanded sightlines"<br><br>(Claims 2 and 16) | Plain and ordinary meaning in view of the claims, specification, and prosecution history.<br><br>The plain and ordinary meaning means: "Sightlines that are considerably, materially or meaningfully enhanced." | Indefinite |
| "the distance that the wrecker controls are located from the side surface of the vehicle | Plain and ordinary meaning in view of the claims, specification, and prosecution history.<br><br>The plain and ordinary meaning means: "A | Indefinite |

| | | |
|---|---|---|
| exterior when the control panel is moved to a second position is about 1-2 feet" (Claim 2) | distance measured from the outside surface of the vehicle, perpendicular to the vehicle, to the furthest extent of the wrecker controls away from the vehicle." | |
| "the wrecker controls comprise integrated electrical and hydraulic controls, each of which are located on a pair of consoles" (Claim 9) | Plain and ordinary meaning in view of the claims, specification, and prosecution history.<br><br>The plain and ordinary meaning means: "The wrecker controls include both electrical and hydraulic controls located on control panels." | Indefinite |

NRC disputes terms 9 through 13 as indefinite.  NRC argues that "[c]ompetitors are entitled to know the scope of the claims with reasonable certainty.  These three claim terms fail to provide that notice function, as they each implicate a variety of subjective factors that vary from person to person."  (ECF 85 at 4).  NRC does not propose alternate constructions to Miller's.  At the Markman hearing, NRC represented that if this Court determines that it will not rule on the issue of indefiniteness at this stage, then it would accept Miller's construction on these terms at this stage with a reservation of their right to assert indefiniteness at the summary judgment stage.  (ECF 99 at 96:2-25).

There are several important factors that caution courts

against deciding indefiniteness prior to summary judgment. First, indefiniteness is proven by "clear and convincing evidence" where a patent's "claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." Nautilus, Inc. v. Biosig Instruments, Inc., 572 U.S. 898, 901 (2014); Microsoft Corp. v. I4I Ltd. P'ship, 564 U.S. 91, 95 (2011). This is a high burden of proof that would be difficult to meet at this early stage. Second, expert testimony may be helpful in this task. Phillips, 415 F.3d at 1318. Third, "the purpose of a *Markman* hearing is for the court and the parties to settle conclusively on the interpretation of disputed claims, Novartis Corp. v. Teva Pharms. USA, Inc., 565 F. Supp. 2d 595, 603 (D.N.J. 2008), whereas indefiniteness invalidates the patent claims entirely. Nautilus, Inc., 572 U.S. at 902 ("A lack of definiteness renders invalid 'the patent or any claim in suit.'"). Thus, the Court may defer the indefiniteness arguments until summary judgment. Ultimately, "[w]hether to decide the issue of invalidity based on indefiniteness at the claim construction stage depends on the particular circumstances and claims at issue in a given case, and is a matter within a court's discretion." Junker v. Med. Components, Inc., No. CV 13-4606, 2017 WL 4922291, at *2 (E.D. Pa. Oct. 31, 2017).

This Court will defer the issue of indefiniteness to the summary judgment stage. Therefore, this Court will construe these terms according to Miller's proposed constructions at this stage. Thus, disputed terms 9 through 13 will be construed as follows:

| Disputed Term | Construction |
|---|---|
| Disputed Term 9: "strategic location" | "A location that provides a particular purpose or advantage." |
| Disputed Term 10: "ergonomically enhanced work surface" | "A work surface that relates to or is designed for efficiency and comfort in the working environment." |
| Disputed Term 11: "substantially expanded sightlines" | "Sightlines that are considerably, materially or meaningfully enhanced." |
| Disputed Term 12: "the distance that the wrecker controls are located from the side surface of the vehicle exterior when the control panel is moved to a second position is about 1-2 feet" | "A distance measured from the outside surface of the vehicle, perpendicular to the vehicle, to the furthest extent of the wrecker controls away from the vehicle." |
| Disputed Term 13: "the wrecker controls comprise integrated electrical and hydraulic controls, each of which are located on a pair of consoles" | "The wrecker controls include both electrical and hydraulic controls located on control panels." |

These constructions will be without prejudice to Defendants' ability to challenge the validity of the patents based on lack of written description or indefiniteness under 35 U.S.C. § 112.

V.   CONCLUSION

The Court construes the claim terms as stated above. An

appropriate Order will be entered.


Date: April 13, 2023                 s/ Noel L. Hillman
At Camden, New Jersey                NOEL L. HILLMAN, U.S.D.J.